UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE WILLIAMS,

    Plaintiff,                                        Civil Action No. 18-CV-11202

vs.                                                       HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 17 and 19]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying her applications for social security disability and Supplemental Security Income benefits. An Administrative Law Judge ("ALJ") held a hearing in February 2017 (Tr. 36-64) and issued a decision denying benefits in May 2017 (Tr. 20-31). This became defendant's final decision in February 2018 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th
> Cir. 1997). Substantial evidence is "such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d
> 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609
> F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601,
> 604 (6th Cir. 2009)). Where the Commissioner's decision is
> supported by substantial evidence, it must be upheld even if the
> record might support a contrary conclusion. *Smith v. Sec'y of Health
> & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a
> substantiality of evidence evaluation does not permit a selective
> reading of the record. "Substantiality of the evidence must be based
> upon the record taken as a whole. Substantial evidence is not simply
> some evidence, or even a great deal of evidence. Rather, the
> substantiality of evidence must take into account whatever in the
> record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d
> 383, 388 (6th Cir. 1984) (internal citations and quotation marks
> omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 50 years old (Tr. 22). She has an eighth grade education and work experience as a hotel housekeeper and hair stylist (Tr. 61). Plaintiff claims she has been disabled since December 2014 due to pain in her knees and back, chest pain with shortness of breath, anxiety, depression, deafness in her right ear, and pre-diabetic numbness in her fingers and feet (Tr. 47-60, 241). She is also schizophrenic and obese and has an IQ of 54-56 (Tr. 42, 55, 313, 352, 356, 368, 423, 484, 486).

The ALJ found that plaintiff's severe impairments are "intellectual disorder; schizophrenia; adjustment disorder; degenerative changes - bilateral knees, status post bilateral total knee arthroplasties; [and] obesity" and that her asthma and gastroesophageal reflux disease are nonsevere (Tr. 23).[1] The ALJ found that despite her impairments plaintiff has the residual functional

---

[1] The ALJ made no findings regarding plaintiff's other impairments. Plaintiff appears to have abandoned these as bases for her disability claim, as she does not mention them in her

2

capacity ("RFC") to perform a limited range of light work.[2] A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, light-level jobs such as a collator, assembler, or inspector/hand packager (Tr. 62). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and determined that she is not disabled (Tr. 30).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because her

---

motion for summary judgment.

[2] 20 C.F.R. §§ 416.967(b) and 404.1567(b) define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

The ALJ found that plaintiff can perform light work

> except the claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and cannot crawl. The claimant must avoid use of hazardous machinery and exposure to unprotected heights. The claimant can perform simple, routine tasks performed in an environment free of fast paced production requirements involving little to no independent judgment and occasional routine work place changes. The claimant requires the option to alternate between sitting and standing approximately every 20 minutes.

(Tr. 25.)

3

RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing. Remand is also required because the ALJ did not properly analyze whether plaintiff meets the criteria of one of the listed impairments.

Plaintiff's RFC evaluation is flawed for the following reasons. First, the ALJ failed to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Voltaren, Norco, Tylenol No. 3 and 4, Singulair, Hydrocortisone, Naprosyn, Diphengydramine, Senna, Buspirone, Flexeril, Clindamycin, Colace, Lovenox, Oxycodone, Protonix, Benadryl, Dilaudid, and Valium (Tr. 319, 321, 354, 366, 369, 384, 400, 403, 409, 412, 424, 429, 431-33, 435, 437, 439-40, 480, 502-03, 506), some of which have known side effects. On her disability report, plaintiff indicated that several of her medications make her feel sleepy (Tr. 279).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust her findings as appropriate regarding plaintiff's RFC; and

4

incorporate these findings in proper hypothetical question(s) to the VE.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on her other impairments. At 5'-6" and 214 pounds (Tr. 348), plaintiff's body-mass index ("BMI") is 34.5. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. Under defendant's regulations, a person with a BMI over 30 is considered to be obese, and the ALJ must consider a disability claimant's obesity at all steps of the sequential process. *See* SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q ("when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.").

In the present case, the ALJ found that obesity is among plaintiff's severe impairments (Tr. 23). While the ALJ asserted that she "considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to SSR 02-01p" (Tr. 28), she does not explain how she did so. In fact, there is no indication in the ALJ's decision that she gave any consideration to plaintiff's obesity. On remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on her other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates her knee pain and/or diminishes her ability to stand, walk, or concentrate. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the RFC evaluation is flawed because the ALJ neglected to make a finding as to whether plaintiff's need to use a cane interferes with her ability to work while standing. The ALJ

5

found that plaintiff "requires the option to alternate between sitting and standing approximately every 20 minutes" (Tr. 25). From this finding, it is apparent that the ALJ accepted, to some extent, plaintiff's testimony that her bilateral knee pain significantly reduces her ability to stand (Tr. 50, 57). The ALJ noted that plaintiff is "status post bilateral total knee arthroplasties" (Tr. 23) and that she "experiences pain in her knees" (Tr. 28). While these findings explain why the ALJ afforded plaintiff a sit/stand option, the ALJ neglected to make a finding as to whether plaintiff can stand unassisted. The ALJ noted plaintiff's testimony, without accepting or rejecting it, that she "uses a cane when standing" (Tr. 15). Plaintiff testified that she uses a cane "[b]ecause I can't balance well" (Tr. 53), and the record shows that plaintiff was prescribed a cane by her knee surgeon (Tr. 401) and that she needs a "walking aid" both to reduce pain and for balance (Tr. 360). If plaintiff needs to use a cane while standing, she would have only one hand available for working while in this position, and in this event, according to the VE, light work would be precluded because "bilateral use of the hands while sitting and standing" is usually required (Tr. 63). On remand, the ALJ must determine whether plaintiff needs to use a cane while standing and, as appropriate, revise her RFC evaluation and her hypothetical question(s) to the VE.

Remand is also required in this matter because the ALJ did not adequately explain her reasons for concluding that plaintiff does not meet the criteria of Listing 12.05B ("Intellectual Disorder"). A claimant is deemed per se disabled under this Listing if she meets the following criteria:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ did not comment on whether ¶ 1 is met, but it plainly appears to be, as plaintiff has full-scale IQ scores of below 70 (Tr. 313, 486). Nor did the ALJ comment on whether evidence supports the conclusion that plaintiff's intellectual disorder began before she turned 22, as required by ¶ 3, and it will be for the ALJ to make this determination on remand.

The ALJ found that ¶ 2 is not met because plaintiff is only mildly or moderately limited in the four areas set forth in subparagraphs 2a-d (Tr. 23-24). However, the ALJ's analysis does not comport with the regulations that direct how a claimant's functioning in these areas must be evaluated, particularly as regards subparagraphs 2a, 2c, and 2d. Subparagraph 2a, concerning a claimant's ability to "[u]nderstand, remember, or apply information,"

> refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms,

7

> instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E1. Rather than making findings relevant to these abilities, the ALJ found that plaintiff is moderately limited because she

> alleged that she has difficulty understanding what is said to her and driving.[3] However, the claimant also stated that she could prepare meals, pay bills, take medications, take public transportation, and shop (Exhibits 3E, 4E). In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, and respond to questions from medical providers (Exhibits 3F, 4F).

(Tr. 23.) There is a complete "disconnect" between the areas of inquiry required by § 12.00E1 (i.e., "abilities to learn, recall, and use information to perform work activities") and the ALJ's findings about certain of plaintiff's activities and her limited ability to communicate non-work-related information. More relevant to § 12.00E1 would be an assessment of plaintiff's memory and judgment, both of which appear to be severely compromised (Tr. 312-13, 349-51, 480-84).

Subparagraph 2c, concerning a claimant's ability to "[c]oncentrate, persist, or maintain pace,"

> refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner;

---

[3] A claimant's ability to drive has no apparent relevance to ¶ 2a. But whether relevant or not, plaintiff did not testify that she has difficulty driving. Rather, she testified that she does not know how to drive (Tr. 41). *See also* Tr. 259 ("I just don't drive").

> ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E3. Here the ALJ found "moderate limitations":

> The claimant demonstrated some concentration difficulties during a consultative examination (Exhibit 3F). However, the claimant did not note any specific issues in this area. Moreover, the claimant said that she is able to prepare meals, watch TV, and manage funds (Exhibits 3E, 4E).

(Tr. 24.) Again, the disconnect between the areas identified as relevant by the regulations and those mentioned by the ALJ is manifest. Further, "some concentration difficulties" during the November 2015 consultative examination is a gross understatement. During that examination, plaintiff "was able to recall one of three objects immediately after I stated them to her, recalling pencil, but forgetting ball and phone" (Tr. 349). Three minutes later, she was able to recall only one of the three objects (Tr. 350). She was completely unable to do any of the simple calculations requested of her, e.g., 4+7. *Id.* Similar testing in 2010 had similar results (Tr. 312). Psychological testing in September 2016 likewise found "significant difficulties related to memory," noting that "[s]everal times during the assessment she would begin answering a question simply to forget what she had been asked to do and have to ask the examiner to repeat what was just said" (Tr. 480).

Finally, subparagraph 2d, concerning a claimant's ability to "[a]dapt or manage oneself,"

> refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically

9

> based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E4. Here the ALJ found "moderate limitations":

> The claimant asserted that she has difficulties dressing and bathing. That said, the claimant also stated that she is able to care for children (Exhibits 3E, 4E). Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and no problems with temper control (Exhibits 3F, 4F).

(Tr. 24.) Once again, the ALJ did not fully analyze the areas identified in the regulations as being relevant to adapting or managing oneself. Grooming and hygiene are relevant, but the record shows that plaintiff needs help dressing and bathing and that she sometimes urinates on herself (Tr. 58, 249, 257). The ALJ made no findings as to the other relevant areas, e.g., her ability to make plans for herself independently. This ability appears to be severely compromised, as plaintiff testified that when she uses public transportation "[s]omebody always walk to the bus stop with me and make sure I get on the right bus" (Tr. 56).

On remand, the ALJ must determine whether plaintiff meets the criteria of Listing 12.05B. Regarding subparagraphs 2a-d of that Listing, the ALJ must make record-based findings which comport with the relevant areas of inquiry that are laid out in § 12.00E1-4.

For the reasons stated above, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is

lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded to defendant for further proceedings as required above. This is a sentence four remand under § 405(g).

Dated: January 18, 2019  
Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE